**No. 14-20224**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**AMBRE BODLE, LESLIE MEECH,**

*Plaintiffs – Appellants*

*v.*

**TXL MORTGAGE CORPORATION, WILLIAM DALE COUCH,
Individually,**

*Defendants – Appellees*

Appeal from Cause No. 4:12-cv-01515
In the United States District Court for the Southern District of Texas
Houston Division

**BRIEF OF APPELLEES
TXL MORTGAGE CORPORATION AND WILLIAM DALE COUCH**

Levon G. Hovnatanian
Texas Bar No. 10059825
*hovnatanian@mdjwlaw.com*
Robert T. Owen
Texas Bar No. 24060370
*owen@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

**ORAL ARGUMENT REQUESTED**

# CERTIFICATE OF INTERESTED PERSONS

No. 14-20224

AMBRE BODLE; LESLIE MEECH,

*Plaintiffs – Appellants*

*v.*

TXL MORTGAGE CORPORATION; WILLIAM DALE COUCH, Individually,

*Defendants – Appellees*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

Plaintiffs In The District Court

     Ambre Bodle
     Leslie Meech
     Lori Prince
     Anastasia Hitzfelder

Plaintiffs/Appellants' Counsel In The District Court

     Charles A. Sturm
     Texas State Bar 24003020
     *csturm@sturmlegal.com*
     Richard Le Blanc, III
     STEELE STURM PLLC
     Bank of America Center
     700 Louisiana Street, Suite 4800
     Houston, Texas 77002
     Telephone – (713) 659-2600
     Facsimile – (713) 659-2601

Appellants

    Ms. Bodle
    Ms. Meech

Appellants' Counsel on Appeal

    Mr. Sturm

Defendants In The District Court

    TXL Mortgage Corporation
    William Dale Couch

Defendants' Counsel In The District Court

    Dale Jefferson
    Texas State Bar 10607900
    *jefferson@mdjwlaw.com*
    William J. Wisdom
    Texas State Bar 21804025
    *wisdom@mdjwlaw.com*
    MARTIN DISIERE JEFFERSON & WISDOM, LLP
    808 Travis St., 20th Floor
    Houston, Texas 77002
    Telephone – (713) 632-1795
    Facsimile – (713) 222-0101

    Ethan D. Carlyle
    *ecarlyle@bakerlaw.com*
    Texas State Bar 24031794
    BAKER & HOSTETLER, LLP
    811 Main, Suite 1100
    Houston, Texas 77002
    Telephone – (713) 646-1323
    Facsimile – (713) 751-1717

Laura Beckman Hedge
Texas State Bar 00790288
*hedge@litchfieldcavo.com*
LITCHFIELD CACO LLP
One Riverway, Suite 1000
Houston, Texas 77056
Telephone – (713) 418-2017
Facsimile – (713) 418-2001

Appellees:

TXL Mortgage Corporation
Mr. Couch

Appellee's Counsel On Appeal

Levon G. Hovnatanian
Texas Bar No. 10059825
*hovnatanian@mdjwlaw.com*
Robert T. Owen
Texas Bar No. 24060370
*owen@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
Telephone – (713) 632-1700
Facsimile – (713) 222-0101

*/s/ Robert T. Owen*
Robert T. Owen
Attorney of Record for Appellees
TXL Mortgage Corporation and
William Dale Couch

## STATEMENT REGARDING ORAL ARGUMENT

The appellees request oral argument. The primary issue in this case is whether a release signed by the appellants following the negotiation and settlement of various claims, including the appellants' claim for additional wages and compensation allegedly owed by TXL Mortgage Corporation to them, satisfies the requirements set forth by this Court in *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255-56 (5th Cir. 2012) to release a claim under the Fair Labor Standards Act, 29 U.S.C. § 207. The facts and law surrounding this issue are somewhat detailed and particular and the appellees believe that hearing from the parties in person will better allow the Court to decide the legal issues before it.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ...........................................iv

TABLE OF CONTENTS............................................................................................v

TABLE OF AUTHORITIES ................................................................................ vii

JURISDICTIONAL STATEMENT ........................................................................xi

ISSUES PRESENTED........................................................................................ xii

STATEMENT OF THE CASE................................................................................1

SUMMARY OF THE ARGUMENT ......................................................................9

ARGUMENT ..........................................................................................................10

I.      THE STANDARD OF REVIEW ..............................................................10

II.     THE DISTRICT COURT PROPERLY CONCLUDED THAT BODLE AND MEECH RELEASED THEIR FLSA CLAIMS...................11

        A.      FLSA Requirements And Exemptions..............................................12

        B.      A Private Agreement Releasing FLSA Claims Is Enforceable Where There Exists A Bona Fide Dispute Regarding Liability. ..........................................................................................14

                1.      There existed a bona fide dispute between the parties regarding compensation allegedly due Bodle and Meech........................................................................................16

                2.      It is irrelevant that the parties did not discuss the actual hours worked by Bodle or Meech...........................................18

3.      The settlement afforded Bodle and Meech compensation and valuable consideration for their disputed claim. ........................................................22

C.      The Release Undisputedly Applies To Bodle And Meech's FLSA Claims. ...............................................................26

III.    IN THE ALTERNATIVE, THE DISTRICT COURT'S SUMMARY JUDGMENT SHOULD BE AFFIRMED UNDER THE DOCTRINE OF RES JUDICATA. ..................................................................27

A.      The Court May Affirm The Summary Judgment On The Alternative Grounds Presented In The Motion. ...............................27

B.      Bodle and Meech's FLSA Claims Are Barred By The Doctrine Of Res Judicata...................................................28

1.      There is a final judgment on the merits signed by a court of competent jurisdiction. ...............................................29

2.      The parties are the same or in privity with those in the Prior Action..............................................................30

3.      The same claim or cause of action was involved in both lawsuits. ..........................................................32

CONCLUSION ..................................................................37

CERTIFICATE OF COMPLIANCE....................................................38

CERTIFICATE OF SERVICE ........................................................39

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Amstadt v. U.S. Brass Corp.*,
919 S.W.2d 644 (Tex. 1996) ........................................................ 30, 31

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...........................................................................11

*Barnes v. Royal Health Care LLC*,
357 Fed. Appx. 375 (2nd Cir. 2009) ..................................................35

*Barr v. Resolution Trust Corp.*,
837 S.W.2d 627 (Tex. 1992) .............................................................10

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
450 U.S. 728 (1981) ...........................................................................12

*Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974), *rev'd on other grounds by*
*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).....................25

*Brooklyn Savs. Bank v. O'Neil*,
324 U.S. 697 (1945) ...........................................................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...........................................................................11

*Conn. Bank of Commerce v. Congo*,
309 F.3d 240 (5th Cir. 2002)..............................................................28

*D&L Prod. Co v. Cuniff D&L*,
180 S.W.2d 205 (Tex. Civ. App.—Eastland 1944, writ dism'd)........33

*Gagnon v. United Technisource, Inc.*,
607 F.3d 1036 (5th Cir. 2010).............................................................25

*Getty Oil Co. v. Ins. Co. of N.A.*,
845 S.W.2d 794 (Tex. 1992) ....................................................... 32, 34

*Hammonds v. Holmes*,
  559 S.W.2d 345 (Tex. 1977) ................................................................31

*Hohnke v. U.S.*,
  69 Fed. Cl. 170 (Fed. Cl. 2005)................................................... 19, 20

*Holtzclaw v. DSC Commc'ns Corp.*,
  255 F.3d 254 (5th Cir. 2001) ........................................... 27, 28

*Igal v. Brightstar Info. Tech. Group, Inc.*,
  250 S.W.3d 78 (Tex. 2008) ...............................................................28

*In re Erlewin*,
  349 F.3d 205 (5th Cir. 2003)..............................................................29

*In re Fairchild Aircraft Corp.*,
  6 F.3d 1119, 1128 (5th Cir. 1993)......................................................25

*In re W. Tex. Mktg. Corp.*,
  12 F.3d 497 (5th Cir. 1994)................................................................30

*Ingersoll-Rand Co. v. Valero Energy Corp.*,
  997 S.W.2d 203 (Tex. 1999) ............................................ 28, 32, 36, 37

*Jones v. Sheehan, Young & Culp, P.C.*,
  82 F.3d 1334 (5th Cir. 1996).............................................................33

*Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*,
  439 Fed. Appx. 359 (5th Cir. 2011) ...................................................33

*Lubrizol Corp. v. Exxon Corp.*,
  871 F.2d 1279 (5th Cir. 1989)............................................................30

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
  470 U.S. 373 (1985) ...........................................................................28

*Martin v. PepsiAmericas, Inc.*,
  628 F.3d 738 (5th Cir. 2010)..............................................................25

*Martin v. Spring Break '83 Prods., L.L.C.*,
  688 F.3d 247 (5th Cir. 2012)..................................................... passim

*Martinez v. Bohls Bearing Equip. Co.*,
361 F.Supp. 2d 608 (W.D. Tex. 2005) .......................................................... 15, 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................................11

*McConnell v. Applied Performance Techs., Inc.*,
98 Fed. Appx. 397 (6th Cir. 2004) ........................................................36

*Mpoyo v. Litton Electro-Optical Sys.*,
430 F.3d 985 (9th Cir. 2005) ..................................................................35

*Olufemi v. Your Care Clinics, LLC.*,
2006 WL 269982 (M.D. Fla. Feb. 3, 2006) ..........................................35

*Overnight Motor Transp. Co. v. Missel*,
316 U.S. 572 (1942) ................................................................................14

*Ovesen v. Scandinavian Boiler Serv., Inc.*,
2011 WL 3510586 (S.D. Fla. 2011) .......................................................35

*Pierce v. Dep't of the U.S. Air Force*,
512 F.3d 184 (5th Cir. 2007) ..................................................................11

*Reliant Energy Servs., Inc. v. Enron Canada Corp.*,
349 F.3d 816 (5th Cir. 2003) ..................................................................26

*Sanders v. Blockbuster, Inc.*,
127 S.W.3d 382 (Tex. App.—Beaumont 2004, pet. denied) ..............33

*Schulte, Inc. v. Gangi*,
328 U.S. 108 (1946) ................................................................................14

*Shaikh v. Holder*,
588 F.3d 861 (5th Cir. 2009) ..................................................................11

*Sims v. Housing Auth. of El Paso*,
2011 WL 3862194 (W.D. Tex. Sept. 1, 2011) ................................. 19, 20

*Singer v. City of Waco*,
324 F.3d 813 (5th Cir. 2003) ..................................................................25

*St. Raphael Med. Clinic, Inc. v. Mint Med. Physician Staffing, LP*,
    244 S.W.3d 436 (Tex. App.—Houston [1st Dist.] 2007, no pet.) .......................30

*State & County Mut. Fire Ins. Co. v. Miller*,
    52 S.W.3d 693 (Tex. 2001) ...............................................................................28

*Stephens v. Assoc. Fin. Servs. Co., Inc.*,
    1993 WL 232055 (E.D. La. June 22, 1993) ......................................................36

*Strozier v. Gen. Motors Corp.*,
    635 F.2d 424 (5th Cir. 1981) .............................................................................21

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) .............................................................................32

*Tex. Refrigeration Supply, Inc. v. F.D.I.C.*,
    953 F.2d 975 (5th Cir. 1992) .............................................................................27

*Walling v. Helmerich & Payne, Inc.*,
    323 U.S. 37 (1944) .............................................................................................14

**Statutes**

28 U.S.C. § 1291 ................................................................................................ xii

28 U.S.C. § 1331 ................................................................................................ xii

28 U.S.C. § 1738 ..................................................................................................28

29 U.S.C. § 207 ................................................................................... iv, xii, 12

29 U.S.C. § 213(a)(1) ..........................................................................................12

29 U.S.C. § 216 ............................................................................................ xii, 29

29 C.F.R. § 541.601 ...................................................................................... 13, 24

**Rules**

Fed. R. App. P.
    28.2.1 ..................................................................................................................... i

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment the district court entered on March 13, 2014.  ROA. 278-79, 474.  Ambre Bodle and Leslie Meech timely filed their notice of appeal on April 14, 2014.  ROA. 475-76.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 207, and 29 U.S.C. § 216.  This Court has jurisdiction to adjudicate the appeal pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

**1.**    Whether the district court erred in granting summary judgment on the ground that Bodle and Meech released any claim for overtime wages under the Fair Labor Standards Act when they signed a binding settlement releasing all claims arising from their employment with TXL?

**2.**    Whether the district court's summary judgment should be affirmed on the alternative ground of res judicata presented in TXL and Couch's motion for summary judgment?

## STATEMENT OF THE CASE

On February 3, 2012, TXL Mortgage Company, Inc. sued Ambre Bodle and Leslie Meech in Texas state court, asserting various claims arising out of Bodle and Meech's breach of their employment agreements with TXL. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A-1.[1] Bodle and Meech filed counterclaims seeking a declaration that a covenant in their employment agreements with TXL was unenforceable. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A-2. Following protracted negotiations, the parties settled their dispute, signed a settlement agreement releasing all claims they had against each other, and moved the state court for entry of an agreed final judgment. Doc 21-1, Doc 21-1, Defs.' Mot. For Summ. J., Ex. A at ¶¶ 9-19, Ex. 7-11.

After executing the settlement and moving the state court for judgment, but before the judgment was signed, Bodle and Meech sued TXL Mortgage Corporation and William Dale Couch in the United States District Court for the Southern District of Texas asserting that TXL and Couch violated the Fair Labor Standards Act by failing to pay Bodle and Meech wages required by the Act. ROA. 8-18. After the state court signed its judgment, TXL and Couch moved for

---

[1] As Bodle and Meech note in their brief, TXL and Couch filed their motion for summary judgment under seal, and it has not been included in the paginated record even though it is included in the Record on Appeal. When citing to the motion for summary judgment, TXL and Couch will cite to the original page number or exhibit to the motion.

summary judgment, which the district court granted.  Doc 21-1, Defs.' Mot. For Summ. J.; ROA. 226-41, 278-79.  After the remaining plaintiffs settled their claims against TXL, the district court signed a final order of dismissal with prejudice, and Bodle and Meech appealed.  ROA. 474-75.

*Facts Pertinent To Appeal*

The appellee, TXL Mortgage Corporation, hired the appellants, Ambre Bodle and Leslie Meech, directly out of college in the early 2000s as loan officer trainees.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of D. Couch at 1).  Bodle and Meech each rose in the company to become two of four highly compensated vice presidents, with Bodle earning nearly $2,000,000.00 and Meech earning nearly $1,000,000.00 during their last three years of employment with the company.  ROA. 112-113.[2]  Bodle and Meech were part of TXL's executive management team and supervised other loan officers at TXL.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of D. Couch at 2).  In November and December 2011, respectively, Bodle and Meech resigned from their positions with TXL.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of D. Couch at 3).

Shortly after Bodle and Meech resigned, appellee William Dale Couch, the President and Chairman of TXL, contacted TXL's customers to advise them of

---

[2]    Bodle earned $633,249.62 in total compensation in 2009, $981,016.78 in total compensation in 2010, and $337,148.38 in total compensation in 2011.  ROA. 112.  Meech earned $171,732.23 in total compensation in 2009, $447,451.35 in total compensation in 2010, and $317,800.01 in total compensation in 2011.  ROA. 113.

Bodle and Meech's departure from the company. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of D. Couch at 1, 3). During those conversations, Couch learned that Bodle and Meech had already attempted to solicit business from TXL's customers for Cornerstone Mortgage, a direct competitor of TXL. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of D. Couch at 3). Such solicitation violated Bodle and Meech's employment agreements with TXL, which required, among other things, that Bodle and Meech not solicit their TXL customers for a period of 12 months after leaving the company. *See* Doc 21-1, Defs.' Mot. For Summ. J., Ex. A-1-1 at 4, Ex. A-1-2 at 4.[3]

In light of their breach of the non-competition agreement, TXL sued Bodle and Meech in cause no. 2012-07107, *TXL Mortgage Company, Inc. v. Ambre Gafford Bodle & Leslie Huegel Meech*, in the 281st Judicial District Court of Harris County, Texas (the "Prior Action"). Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 2-3), Ex. A-1. In response, Bodle and Meech filed

---

[3]     Relative to solicitation of customers, Bodle and Meech's employment agreements provides:

> . . . the Employee understands and agrees that for a period of twelve (12) months following the termination of this Employment Agreement by either party, for whatever reason, the Employee will not solicit, contact, or communicate with any person, company, or business that was a customer or prospective customer of the Company and that the Employee personally contacted, solicited, services, or sold products to as an employee of the Company at any time during the twelve (12) months preceding termination of this Agreement, for purpose of engaging in the same or similar business of the Company.

Doc 21-1, Defs.' Mot. For Summ. J., Ex. A-1-1 at 4, A-1-2 at 4.

counterclaims seeking a declaration that the covenant not to compete was unenforceable.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 3), Ex. A-2.

After agreeing to a temporary injunction that enjoined Bodle and Meech from soliciting specified TXL customers through the end of 2012, the parties opened settlement negotiations.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶¶ 4-5).  On May 3, 2012, TXL's counsel Nitin Sud e-mailed Richard Le Blanc, Bodle and Meech's counsel, a settlement proposal requesting that the agreed temporary injunction remain in effect through the end of 2012 and that Bodle and Meech be enjoined from soliciting specified additional TXL customers until April 30, 2013.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶¶ 5-7).  Sud also proposed that Bodle and Meech pay TXL $5,000 for their breach of the employment agreements.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 8).  TXL also requested that Bodle and Meech agree to a broad release releasing all actual or potential claims "related to or in any way arising from DEFENDANTS' employment with TXL" including all claims based on "any federal . . . law, statute, or regulation" in consideration for settling all disputed claims.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 8), Ex. 6 at ¶ 4.

Sud's May 3, 2012 e-mail to Le Blanc led to a lengthy negotiation regarding the terms of the settlement and judgment. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 9). During those negotiations, Le Blanc e-mailed Sud and advised that Bodle and Meech believed they possessed a claim against TXL for additional allegedly withheld wages and compensation. Doc. 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 9). That e-mail provides:

> Nitin: I was going over the settlement agreement with my clients, and they raised an issue of which I was not aware. I don't want to blow up our settlement, but I would be committing malpractice if I didn't bring this to your attention. *It appears both clients have some claims to commissions they are owed, and Ambre Bodle was also not paid her last 6 weeks of salary.* TXL was keeping a percentage of their commissions in some type of reserve on all FHA loans that they closed for some reason. TXL never paid out these commissions held in reserve.
>
> It's broken down like this:
>
> Amber Bodle:
> Salary – TXL stopped paying Ambre her salary October 1st, 2011 through when she left November 2011. Her salary was $250,000 a year. It looks like about 6 weeks of salary which is about $30,000.
>
> FHA Reserves – beginning about May/June 2010 TXL started retaining .5% of the loan amount of her commissions on all FHA closings. This practice continued until April 1, 2011. TXL told all of the loan officers they would get their reserves back, but gave no date as to when. Ambre's FHA reserve is in excess of $50,000.00. They even provided monthly statements showing how much each loan officer was accumulating as time when on, although TXL stopped sending statements to the loan offers at some point.
>
> Leslie Meech:
> FHA Reserves: Same as above, however, her reserve account was in excess of $35,000.00.

> Considering you and I have not discussed this issue, I don't know if you want to carve this out of the settlement agreement and deal with later or address it now. Please let me known when you have time to discuss. Thanks.

Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 9), Ex. 7 at 4-5 (emphasis added). Sud responded to Le Blanc and informed him that he and TXL were "firm in our position that neither Ambre nor Leslie are entitled to any compensation for wages." Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 10), Ex. 7 at 4. Le Blanc wrote back approximately one hour later and reiterated that Bodle and Meech believed they were entitled to additional compensation, noting "[t]hese are wages." Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 11), Ex. 7 at 2-3. He also threatened to file additional compensation claims against TXL and used these claims as leverage to modify the proposed settlement:

> Look, this is going to open up a whole new can of worms for TXL and Dale. I plan on filing counterclaims tomorrow and asking for attorneys' fees for breach of contract and under the Texas Payday Act. Also, this apparently happened to all of the other Loan Officers at TXL, so they may want to join in once they catch wind of it. My clients are, however, willing to walk away from about $120,000 of commission and salary they are owed for a lesser injunction. We can have the current injunction expire at the end of May, and TXL can have the short list for both Ambre and Leslie that we agreed to until June 2013.

> I'm getting ready to go on the offensive here. TXL will not get a better deal after a trial and will end up owing us damages and attorneys' fees. Please let me know. Thanks.

Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 11), Ex. 7 at 2-3. Indeed, unbeknownst to TXL's counsel, at the time LeBlanc sent the e-mail threatening to "go on the offensive," Bodle and Meech had already signed consent agreements to be party plaintiffs in a collective action to recover unpaid wages under the FLSA. *See* ROA. 15-16.

A day later, on May 8, 2012, Sud wrote back to Le Blanc and reminded him that TXL also had affirmative claims for damages that would offset any compensation or wage claim Bodle and Meech may have had, advising him that Bodle and Meech would be liable to TXL for $600,000 to $800,000 plus exemplary damages and attorneys' fees. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 13), Ex. 7 at 2. Sud wrote: "[t]herefore, although there is clearly a dispute as to facts surrounding your clients' wage claims, even if that has merit, the potential damages associated with their violations against TXL will be significantly higher." *Id.*

Le Blanc then called Sud with a proposal that Bodle and Meech would agree to settle and release their wage claims if TXL would release its affirmative damage claims and remove Beazer Homes from the list of TXL clients Bodle and Meech would be enjoined from soliciting in the final judgment. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 14). After conferring with TXL, Sud wrote Le Blanc back and accepted his proposal:

> Richard,
>
> After our phone call I conferred with my clients, and it looks like we have an agreement. We are essentially agreeing to our original agreement from earlier last week with one exception – Beazer will be removed from the temporary injunction upon the finalizing of the settlement agreement.

Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 14), Ex. 7 at 1.

Sud and Le Blanc then agreed that the e-mail string would constitute a rule 11 settlement agreement under Texas law. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 15), Ex. 7 at 1.

TXL signed the settlement agreement on May 10, 2012, and Sud sent it to Le Blanc. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 16), Ex. 9. Le Blanc e-mailed the fully executed settlement agreement and final judgment, with Beazer Homes stricken from the list of prohibited customers, on May 14, 2012. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 16), Ex. 9.

On May 16, 2012, the parties filed a Joint Motion for Entry of Agreed Final Judgment in the Prior Action. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 17), Ex. 10. However, despite specifically negotiating with Sud regarding Bodle and Meech's claims for allegedly withheld wages and compensation and receiving valuable consideration in exchange for a release of those claims, one day after moving the state court for judgment, Bodle and Meech sued TXL and Couch in federal court seeking to recover allegedly withheld wages

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. ROA. 8-14. The state court signed its final judgment in the Prior Action six days later on May 23, 2012. Doc 21-1, Defendant's Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 19), Ex. 11.

After the state court signed its judgment, TXL and Couch moved the district court for summary judgment on grounds that the FLSA claims were barred by Bodle and Meech's express release, as well as the doctrine of res judicata. Doc 21-1, Defs.' Mot. For Summ. J. The district court granted summary judgment to TXL and Couch, concluding that Bodle and Meech's release barred their subsequently filed FLSA claims. ROA. 240-41, 278.

## SUMMARY OF THE ARGUMENT

This Court holds that FLSA claims may be released pursuant to a private agreement where there is a bona fide dispute regarding the compensation allegedly due to an employee and the employee does not waive or bargain away its substantive FLSA rights. *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255-56 (5th Cir. 2012). The evidence in the record establishes that there existed a bona fide dispute regarding the compensation due to Bodle and Meech following their resignations from TXL, but that the parties settled this dispute in a manner providing Bodle and Meech with substantial and valuable consideration – the release of hundreds of thousands of dollars of liability and a modification of an

injunction to allow Bodle and Meech to solicit a customer of TXL. The evidence in the record establishes that Bodle and Meech's release of their FLSA claim complied with the requirements set forth in *Martin*, and the district court's summary judgment should be affirmed on this basis.

In the alternative, the evidence in the record establishes that the doctrine of res judicata bars Bodle and Meech's claims under the FLSA. To prevent parties from splitting their claims into multiple lawsuits and promote judicial economy, the doctrine of res judicata, under Texas law, prevents the relitigation of a claim that has been finally adjudicated, as well as related matters that, with the use of diligence, could have been litigated in the prior suit. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Bodle and Meech's FLSA claims arise out of the same transaction or occurrence at issue in the Prior Action, and Bodle and Meech are precluded by the state court's judgment from pursuing those claims in a subsequent lawsuit. *See id.*

## ARGUMENT

## I.    THE STANDARD OF REVIEW

This Court "review[s] a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Pierce v. Dep't of the U.S. Air Force*,

512 F.3d 184, 186 (5th Cir. 2007). "Questions of law are reviewed de novo." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009).

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine dispute if the record, taken as a whole, could not lead a rational trier-of-fact to find for the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 597–98 (1986).

## II.   THE DISTRICT COURT PROPERLY CONCLUDED THAT BODLE AND MEECH RELEASED THEIR FLSA CLAIMS.

Bodle and Meech ask this Court to reverse the district court's summary judgment to allow them–each highly compensated former vice presidents of TXL who collectively earned over $3,000,000.00 in total compensation in the last three years of their employment with the company–to pursue claims for allegedly withheld overtime wages pursuant to the FLSA. However, the district court properly concluded that Bodle and Meech released any FLSA claims through a

private agreement with TXL pursuant to this Court's precedent in *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247 (5th Cir. 2012). The summary judgment should be affirmed.

### A. FLSA Requirements And Exemptions.

As the Supreme Court explains, the FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours . . . to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive 'a fair day's pay for a fair day's work.'" *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). The FLSA requires that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. However, Congress did not intend that the FLSA would make millionaires, such as Bodle and Meech, into multi-millionaires and exempts from its requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The regulations effectuating these requirements and exemptions provide:

> (a) An employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt

duties or responsibilities of an executive, administrative or professional employee . . .

(b)(1) "Total annual compensation" must include at least $455 per week paid on a salary or fee basis. Total annual compensation may also include commissions, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period . . .

(c) A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties. Thus, a highly compensated employee will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part. An employee may qualify as a highly compensated executive employee, for example, if the employee customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption under § 541.100.

29 C.F.R. § 541.601.

Despite indisputably earning more than $100,000 in total compensation for each of the last three years of their employment with TXL and acting as part of TXL's executive management team with responsibilities to oversee TXL's loan officers (*See* ROA 112-13; Doc 21-1, Defs.' Mot. For Summ. J., Exhibit A (Affidavit of D. Couch)), Bodle and Meech ask this Court to reverse the district court's summary judgment to allow them to pursue overtime wages allegedly owed under the FLSA. It should not.

### B.    A Private Agreement Releasing FLSA Claims Is Enforceable Where There Exists A Bona Fide Dispute Regarding Liability.

The Supreme Court has repeatedly held that a covered employee's substantive rights under the FLSA are not waivable. *See Barrentine*, 450 U.S. at 740 ("[W]e have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.") (citing *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697 (1945); *D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-116 (1946); *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944); *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 577 (1942)).

However, the Supreme Court has not addressed whether a private agreement settling an FLSA claim is enforceable where there is a bona fide dispute regarding the amount of compensation allegedly due an employee. This Court has, and Bodle and Meech concede in their briefing that, in the Fifth Circuit, a private agreement resolving a bona fide dispute regarding the amount of compensable wages is effective to release an FLSA claim. *See* Appellants' Brief at 13 (citing *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d at 254-57). Accordingly, the primary question in this appeal is whether the release signed by Bodle and Meech complies with the requirements set forth by this Court in *Martin*. It does.

In *Martin*, this Court adopted the holding and logic expressed in *Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp. 2d 608 (W.D. Tex. 2005), "a private compromise of claims under the FLSA is permissible where there exists a bona fide dispute as to liability." *Martin*, 688 F.2d at 245-55. In *Martinez*, a plaintiff alleged that his employer owed him more than $3,000 in unpaid overtime, while the employer believed the plaintiff was only owed approximately $500 based on its analysis of the time cards. *Martinez*, 361 F.Supp. 2d at 612, 631-32. The *Martinez* court held that the plaintiff's acceptance of a check for $1,000 for settlement of all overtime claims at issue was a valid release of the plaintiff's FLSA rights and was enforceable in the litigation following the settlement. *Id.* at 631-32. The court held "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due." *Id.* at 631.

Similarly, *Martin* involved a dispute regarding the number of overtime hours various employees worked. *See Martin*, 688 F.3d at 255. A union representative conducted an investigation into the dispute, received conflicting information from various sources, concluded that it would be impossible to determine whether the employees worked the number of hours they claimed, and entered into a settlement agreement pertaining to the disputed hours. *Id.* Approving the rationale espoused in *Martinez*, this Court held that "the payment offered to and accepted by

15

Appellants, pursuant to the Settlement Agreement, is an enforceable resolution of those FLSA claims predicated on a bona fide dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves." *Id.* at 255. Accordingly, under *Martin*, a private agreement to release an FLSA claim is enforceable where that agreement resolves a bona fide dispute as to the amount of compensation due. *Id.* at 255.

### 1. There existed a bona fide dispute between the parties regarding compensation allegedly due Bodle and Meech.

As in *Martin* and *Martinez*, the settlement agreement between TXL, on the one hand, and Bodle and Meech, on the other, resolved a bona fide dispute regarding compensation allegedly due Bodle and Meech. During the settlement negotiations in the Prior Action, Bodle and Meech's counsel wrote TXL's counsel to advise that "It appears both clients have some claims to commissions they are owed, and Ambre Bodle was also not paid her last 6 weeks of salary." Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 9), Ex 7 at 4. TXL's counsel responded, noting that it was TXL's "firm" position that neither Bodle nor Meech were entitled to any additional compensation. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 10), Ex 7 at 4. Bodle and Meech's counsel then contended that he was "about to go on the offensive" but noted that "[m]y clients are, however, willing to walk away from about $120,000 of commission and salary they are owed for a lesser injunction." Doc 21-1, Defs.' Mot. For Summ. J., Ex. A

(Aff. of N. Sud at ¶ 11), Ex 7 at 3.  The next day, TXL's counsel wrote that "*there is clearly a dispute as to facts surrounding your clients' wage claims, even if that has merit*," while also noting that "the potential damages associated with their violations against TXL will be significantly higher" and detailing claims against Bodle and Meech that TXL believed to have a value between $600,000 to $800,000.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 13), Ex. 7 at 3.  Bodle and Meech's counsel then proposed that all claims, including TXL's affirmative claims against Bodle and Meech, as well as Bodle and Meech's claims for additional compensation, be released in exchange for a lesser injunction to be entered by the state court.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 14).  TXL agreed to these terms and Bodle and Meech signed a release providing:

> **4.    DEFENDANTS' Release:**    In    exchange    for    the consideration identified above, [Bodle and Meech] hereby fully and completely release and discharge TXL and its agents, representatives, attorneys, successors, and assigns from any and all actual or potential claims, demands, actions, causes of action, and liabilities of any kind or nature, whether known or unknown, including but not limited to all claims and causes of action *that were or could have been asserted in the Lawsuit and all claims and causes of action related to or in any way arising from [Bodle and Meech's] employment with TXL*, whether based in tort, contract (express or implied), warranty, deceptive trade practices, *or any federal, state or local law, statute, or regulation*.  This is meant to be, and shall be construed as, a broad release.

Doc 21-1, Defs.' Mot. For Summ. J., Ex. 6 at ¶ 4. (italicized emphasis added). As the district court properly held, the correspondence between counsel in the record establishes that there existed a bona fide dispute regarding compensation allegedly due to Bodle and Meech as required by this Court in *Martin*. *See Martin*, 688 F.3d at 255.

### 2. It is irrelevant that the parties did not discuss the actual hours worked by Bodle or Meech.

Bodle and Meech contend that there can be no bona fide dispute under *Martin* unless there exists a specific dispute "about time worked." Appellants' Brief at 7-8. However, Bodle and Meech's construction of *Martin* simply ignores that this Court did not narrowly limit its holding and analysis to disputes regarding the actual amount of time worked. *Martin*, 688 F.3d at 247. While the bona fide dispute in *Martin* did concern the number of hours some employees allegedly worked, the *Martin* court held that "the parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked *or compensation due*." *Martin*, 688 F.3d at 247 (emphasis added). Accordingly, this Court has already concluded that a bona fide dispute may exist where the parties dispute the total amount of compensation due to an employee, as was the issue in the settlement negotiations relative to Bodle and Meech in the Prior Action. *Id.*

Ignoring this Court's own prior statements, Bodle and Meech cite two non-binding cases in support of their argument that a bona fide dispute may exist only where the number of hours an employee worked are at issue. Appellants' Brief at 7 (citing *Sims v. Housing Auth. of El Paso*, 2011 WL 3862194 (W.D. Tex. Sept. 1, 2011); *Hohnke v. U.S.*, 69 Fed. Cl. 170 (Fed. Cl. 2005)). However, neither of the cited cases support Bodle and Meech's contention that there can be a bona fide dispute only "about time worked." *See Hohnke*, 69 Fed. Cl. at 713, 175-76; *Sims*, 2011 WL 3862194 at * 6-7. Both provide, as this Court held in *Martin*, that there may be a bona fide dispute where the parties dispute the amount of compensation due to an employee. *Id.*

> For example, in *Hohnke*, the Court of Federal Claims held:
>
> to be enforceable, an FLSA settlement must resolve a bona fide dispute over hours worked *or compensation due* . . . And to settle such a bona fide dispute, there must be some resolution of the number of hours worked *or amount of money due*.

*Hohnke*, 69 Fed. Cl. at 713, 175-76 (emphasis added). The court concluded that there was no bona fide dispute as necessary to enter into an enforceable release of the employee's FLSA claims where (1) the employee had not presented her employer with an overtime claim, (2) the employer had never objected to such a claim, and (3) the parties never discussed the facts relevant to such a claim in settlement negotiations or discussed how much compensation the employee was

entitled to receive for such a claim. *Id.* at 176. As detailed below, the evidence in the record establishes that, unlike in *Hohnke*, those facts *are present* in this case.

Likewise, in *Sims*, a federal district court in the Western District of Texas held that for a bona fide dispute to exist, the employer and employee must be engaged in an adversarial posture. *Sims*, 2011 WL 3862194 at * 6. The *Sims* court held that, under the facts of the case before it, there was no bona fide dispute because:

> there is no indication that [the employees] had any notion that they might be due wages under the FLSA when they left Defendant's employ . . . [the employer] has not shown that [the employees] presented it with an FLSA claim, that [the employer] objected in any fashion to such a claim, or that there was a discussion of the number of overtime hours they had worked *or of the amount of pay they were due*.

*Id.* at *6-7 (emphasis added). For the reasons detailed below, Bodle and Meech, unlike the employees in Sims, had knowledge of their FLSA claims.

During the settlement negotiations in the Prior Action, indisputably an adversary proceeding, the parties disputed whether Bodle and Meech were entitled to additional wages and compensation from their work with TXL. Defs.' Mot. For Summ. J., Ex. A. (Aff. of N. Sud at ¶ 10), Ex. 7 at 4 (noting that TXL's counsel and TXL were "firm in our position that neither Ambre nor Leslie are entitled to any compensation for wages."). Moreover, unlike the employees in *Hohnke* and *Sims*, Bodle and Meech were clearly aware of their compensation claims at the

time they agreed to settle: they personally signed consent agreements to proceed as party plaintiffs in a collective action to pursue their compensation claims under the FLSA during the settlement negotiations and their counsel specifically raised their claims for allegedly withheld wages during the settlement negotiations. Defs.' Mot. For Summ. J., Ex. A. (Aff. of N. Sud at ¶ 9-15), Ex. 7; ROA. 15-16. All such acts occurred before Bodle and Meech settled and released their wage and compensation claims. *Compare* Defs.' Mot. For Summ. J., Ex. 7 *with* Defs.' Mot. For Summ. J., Ex. 9. Accordingly, there are simply no facts comparable to the *Hohnke* and *Sims* cases cited by Bodle and Meech, and those cases do not compel a conclusion that there was no bona fide dispute.

Bodle and Meech also contend that there is no bona fide dispute because there was no FLSA lawsuit on file at the time of the settlement and because their counsel did not specifically mention "overtime" in the settlement negotiations Appellants' Brief at 8. However, Bodle and Meech's argument ignores the fact that this Court recognizes that a party may release statutory rights without specifically addressing that right in a prior settlement negotiation where the remedy sought in a subsequent lawsuit is the same remedy that was previously sought and settled. *Strozier v. Gen. Motors Corp.*, 635 F.2d 424, 426 (5th Cir. 1981) (noting that "where [t]he remedy sought and settled [is] the precise remedy sought in [the] lawsuit," a release is valid even as to unmentioned statutory

remedies).  The claim need not be explicitly sought in a prior suit.  *See id.*  Bodle and Meech concede that they settled their claims for additional wages and compensation from their work with TXL (*see* ROA. 167);[4] accordingly, they cannot now seek additional wages under the FLSA as that is the same remedy previously sought and settled.  *See Strozier,* 635 F.2d at 426.

The evidence in the record establishes that there existed a bona fide dispute regarding Bodle and Meech's entitlement to additional wages and compensation from their employment with TXL.  *See* Doc 21-1, Defs.' Mot. For Summ. J. Ex. A (Aff. of N. Sud at ¶ 9-15); Ex. 7.  Bodle and Meech contended they were entitled to an additional $120,000 in compensation, while TXL's position was that they were entitled to nothing.  *Id.*  In light of these facts, the district court properly concluded that there existed a bona fide dispute as required to privately settle and release a claim under the FLSA.  *See Martin*, 688 F.3d at 247.

### 3.    The settlement afforded Bodle and Meech compensation and valuable consideration for their disputed claim.

Bodle and Meech also claim that the release is not enforceable because it did not afford them "everything to which they are entitled under the FLSA." Appellants' Brief at 8.  Such argument is meritless.

---

[4]      "There was an understanding by Bodle and Meech executing a settlement agreement in the Prior Action that they were releasing potential claims for commission and salary . . . Consequently, Bodle and Meech have not brought those claims in the current proceeding . . . ."  ROA. 179 (Bodle and Meech's Response to TXL and Couch's Motion for Summary Judgment).

While FLSA rights cannot be abridged by contract or otherwise waived, in *Martin* this Court held that there is no such waiver where a party "personally received and accepted compensation" for a disputed claim. *Martin*, 688 F.3d at 257. The summary judgment evidence establishes that Bodle and Meech received and accepted compensation for their disputed wage claims because TXL released Bodle and Meech from hundreds of thousands of dollars of potential liability, and modified an injunction as requested by Bodle and Meech, in exchange for Bodle and Meech's release of their compensation claims. *See* Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 14), Ex. 7 at 2.

Pursuant to its plain meaning, "compensation" includes "setoff," *i.e.*, a party's "right to reduce the amount of a debt by any sum the creditor owes the debtor." BLACK'S LAW DICTIONARY, 118, 640 (2d Pocket Ed. 2001).[5] When Bodle and Meech presented their wage claims to TXL in the context of the Prior Action, TXL had claims pending against each of them for (1) breach of contract, (2) breach of fiduciary and other duties, (3) tortious interference with contract, (4)

---

[5]     Black's Law Dictionary defines "compensation" to mean:

> 1. Remuneration and other benefits received in return for services rendered; esp. salary or wages. 2. Payment of damages, or any other act that a court orders to be done by a person who has caused injury to another and must therefore make the other whole. 3. *See* SETOFF (2).

BLACK'S LAW DICTIONARY, 118, 640 (2d Pocket Ed. 2001). "Setoff" means, in pertinent part, "2. A debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor." *Id.* at 640.

tortious interference with prospective business relationships, (5) misappropriation of trade secrets, (6) conversion, (7) violations of the Texas Theft Liability Act, (8) civil conspiracy, and (9) unjust enrichment and sought to recover hundreds of thousands of dollars in actual and exemplary damages.  Doc 21-1, Defs.' Mot. For Summ. J., Ex. A-1.  Bodle and Meech and their counsel could, and certainly did, weigh this potential liability against their claim for $120,000 in additional compensation before agreeing to settle and release that claim.   Indeed, such a decision was certainly reasonable and proper as there is no evidence in the record that Bodle or Meech are entitled to *any* relief under the FLSA.  Under the FLSA, highly compensated individuals who earn more than $100,000 in total compensation per year and regularly and customarily perform the duties of an executive, administrative, or professional employee, such as Bodle and Meech did, are exempted from the FLSA's overtime requirements.  *See* 29 C.F.R. § 541.601.[6]

Therefore, Bodle and Meech, as highly compensated individuals, would not be entitled to recover damages pursuant to the FLSA in any event.  Regardless, Bodle

---

[6] As noted above, in the last three years of their employment, Bodle earned $633,249.62 in total compensation in 2009, $981,016.78 in total compensation in 2010, and $337,148.38 in total compensation in 2011.  ROA. 112.  Meech earned $171,732.23 in total compensation in 2009, $447,451.35 in total compensation in 2010, and $317,800.01 in total compensation in 2011.  ROA. 113.   They were also charged with overseeing TXL's loan officers.  Doc. 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of D. Couch).

TXL has limited its discussion of Bodle and Meech's earnings to the last three years of their employment because the FLSA's statute of limitations limits them, at most, to recovery for three years.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).

and Meech's statement that they "did not receive **anything** in the settlement to which they were entitled under the FLSA" (Appellants' Brief at 8) is simply wrong, as by giving up a wage claim they valued at $120,000, TXL released them from potentially hundreds of thousands of dollars in liability and revised an agreed injunction to allow Bodle and Meech to solicit a customer as Bodle and Meech specifically requested.  Defs.' Mot. For Summ. J., Ex. A. (Aff. of N. Sud at ¶ 14).  Such an exchange constitutes compensation and is valuable consideration supporting Bodle and Meech's release of any FLSA claim.[7]

---

[7]     Bodle and Meech may contend that because an employer is not entitled to file counterclaims to seek a setoff of an employee's FLSA claims from other affirmative claims the employer has against the employee, such setoff is not compensation.  *See Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 742 (5th Cir. 2010).  To the extent any such argument is asserted, however, it has been waived.  *See In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993) (holding that an "argument must be raised to such a degree that the trial court may rule on it" or it is waived on appeal).  Bodle and Meech did not assert in the district court, or even in their brief, that a setoff effectuated by the parties' settlement agreement was not compensation.  *See* ROA. 175-87, 218-23.  Accordingly, to the extent any such reason is asserted as a basis to reverse the district court's judgment in any reply, it should be rejected as waived.  *See In re Fairchild Aircraft Corp.*, 6 F.3d at 1128.

Moreover, any such argument is substantively incorrect.  Even though this Court holds that an employer is not entitled file a counterclaim to setoff amounts an employee owes it for a breach of contract in an FLSA lawsuit, that does not change the fact that where two former employees agree to release wage claims they value at $120,000 in exchange for a release of other claims against them valued at $600,000 to $800,000 and a modification of an injunction to allow those employees to solicit customers they would otherwise be barred from soliciting, that the employees have been compensated for their claim and received valuable consideration in exchange for their release.  Indeed, neither *Martin v. PepsiAmericas, Inc.*, 628 F.3d at 742, nor this Court's other cases discussing this issue, hold otherwise.  *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010); *Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003); *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974), *rev'd on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

**C.    The Release Undisputedly Applies To Bodle And Meech's FLSA Claims.**

To settle the claims in the Prior Action, TXL proposed that Bodle and Meech release any compensation or wage claims they may have held against TXL, and Bodle and Meech agreed, signing a release providing: "[Bodle and Meech] fully and completely release and discharge TXL and its agents, representatives, attorneys, successors, and assigns from any and all actual or potential claims . . . that were or could have been asserted in the Lawsuit and all claims and causes of action *related to or in any way arising from [Bodle or Meech's] employment with TXL*, whether based in tort, contract (express or implied), warranty, deceptive trade practices, *or any federal, state or local law, statute, or regulation*."  Doc 21-1, Defs.' Mot. For Summ. J., Exhibit 6 at ¶ 4 (emphasis added).  Applying the plain meaning of the release, Bodle and Meech settled and released any claim under the FLSA.  *See Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 822 (5th Cir. 2003) ("When a contract is expressed in unambiguous language, its terms will be given their plain meaning and will be enforced as written.").  Indeed, Bodle and Meech have not contended otherwise either in the district court or in this appeal.  Had Bodle and Meech intended to pursue claims under the FLSA, they could have carved such claims out of the release agreement, but they did not.  Because the evidence in the record establishes that Bodle and Meech released their FLSA claims pursuant to the plain meaning of the parties' settlement agreement, in

26

the event the Court concludes that the settlement complies with the requirements set forth in *Martin v. Spring Break '83 Productions*, the district court's summary judgment should be affirmed.

## III. IN THE ALTERNATIVE, THE DISTRICT COURT'S SUMMARY JUDGMENT SHOULD BE AFFIRMED UNDER THE DOCTRINE OF RES JUDICATA.

### A. The Court May Affirm The Summary Judgment On The Alternative Grounds Presented In The Motion.

TXL and Couch moved for summary judgment on grounds of both release and claim preclusion.  Doc. 21-1, Defs.' Mot. For Summ. J. at 8-17.  While the district court granted summary judgment based solely upon Bodle and Meech's release of their FLSA claims (*see* ROA. 240-41, 278), this Court "may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."  *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001); *see also Tex. Refrigeration Supply, Inc. v. F.D.I.C.*, 953 F.2d 975, 980 (5th Cir. 1992) ("We will affirm a grant of summary judgment if we find a basis, independent or not of the district court's reasoning, adequate to support the result . . .  We may affirm even in situations in which the district court's ruling was incorrect, as long as the result was proper.").  Accordingly, even in the event this Court were to somehow conclude that Bodle and Meech did not effectively release their FLSA claims the district court's summary judgment should

still be affirmed on the alternative grounds presented in the motion. *See Holtzclaw*, 255 F.3d at 258.

**B.    Bodle and Meech's FLSA Claims Are Barred By The Doctrine Of Res Judicata.**

In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985); *Conn. Bank of Commerce v. Congo*, 309 F.3d 240, 248 (5th Cir. 2002); 28 U.S.C. § 1738.

Under Texas law, the doctrine of res judicata bars assertion of a claim in a subsequent lawsuit when: (1) there is a prior final judgment on the merits by a court of competent jurisdiction; (2) the parties in the second action are the same or in privity with those in the first action; and (3) the second action is based on the same claims that were raised or that could have been raised in the first action. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008); *see also Barr*, 837 S.W.2d at 628. The Supreme Court of Texas instructs that "this approach mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit." *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *see also Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206-07 (Tex. 1999) (holding that res judicata precludes the assertion of all "claims or defenses that, through diligence, should have been litigated in the prior suit but

were not."); *In re Erlewin*, 349 F.3d 205, 210 n. 5 (5th Cir. 2003) ("In the Texas courts, the doctrine of res judicata . . . bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in the prior suit.").

### 1. There is a final judgment on the merits signed by a court of competent jurisdiction.

The state district court signed a final judgment on May 23, 2012. Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Aff. of N. Sud at ¶ 19), Ex. 11. As a court of general jurisdiction, the state district court had subject-matter jurisdiction over TXL's breach of contract claim against Bodle and Meech. *See* Tex. Const. Art. IV, Sec. 8 ("District court jurisdiction consists of exclusive, appellate and original jurisdiction of all actions, proceedings, and remedies . "). From this jurisdictional base, the state court properly signed the Agreed Final Judgment. The state court also had jurisdiction over Bodle and Meech's FLSA claim. 29 U.S.C. § 216(b) ("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated . . ."). Under Texas law, the Agreed Final Judgment signed by the state district court in the Prior Action is a final judgment on the merits. *See St. Raphael Med. Clinic, Inc. v. Mint Med. Physician Staffing, LP*, 244 S.W.3d 436, 439 (Tex.

App.—Houston [1st Dist.] 2007, no pet.) ("an agreed judgment is a final judgment on the merits"). Indeed, this Court has recognized that a consent judgment is a judgment on the merits and is to be given the finality afforded under the rules of claim preclusion. *In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 500 (5th Cir. 1994).

> ## 2. The parties are the same or in privity with those in the Prior Action.

Bodle and Meech and TXL were parties to the Prior Action. Doc 21-1, Defs.' Mot. For Summ. J., Ex A-1, Ex. A-2. While Couch was not a party to the Prior Action, he is an employee of TXL and is, therefore bound by the judgment for purposes of res judicata. *See Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288-89 (5th Cir. 1989) (holding "vicarious liability relationship between [the employer] and its employees . . . justifies claim preclusion"); Doc 21-1, Defs.' Mot. For Summ. J., Ex. A (Affidavit of D. Couch at 1) (noting that Couch is an employee of TXL). Accordingly, all parties to the federal action were parties bound by the prior state court judgment. *See Lubrizol Corp.*, 871 F.2d at 1288-89.

Moreover, the doctrine of res judicata does not require strict identity of the parties. A non-party to a prior suit may qualify as a party for res judicata purposes if it is in privity with a named party. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). There are at least three ways a defendant in a subsequent suit can establish privity with a party from a prior action: (1) he can control an action even if he was not a party to it; (2) his interests can be represented by a

party to the action; or (3) he can be successors in interest, deriving his claims through a party to the prior action. *Id*. Corporate officers are in privity with the companies they represent in the res judicata context when they act within the course and scope of their employment. *See Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977).

Bodle and Meech's own complaint in this action establishes that Dale Couch is in privity with TXL:

> Defendant William Dale Couch is President, a director, and a shareholder of TXL. Defendant Couch had operational control of TXL and effectively dominated its administration or otherwise acted, or had the power to act, on behalf of TXL vis-à-vis its employees. This includes, but is not limited to, developing and implementing pay practices, hiring and firing employees, undertaking managerial responsibilities, and otherwise exercising control of the work situation.

ROA. 11 at ¶ 14.

Moreover, Bodle and Meech's counsel's statements in the settlement negotiations demonstrate that Couch was acting within the course and scope of his employment with TXL for purposes of the FLSA claims asserted:

- [regarding compensation allegedly owed] "Dale told the Loan Officers that they would be getting this money back as long as the loans did not come back from FHA."

- "Look, this is going to open up a whole new can of worms for TXL and Dale."

Doc. 21-1 Defs.' Mot. For Summ. J., Ex. 7 at 3.   Accordingly, the summary

judgment evidence in the record establishes that the parties in this lawsuit were

parties in the prior state court lawsuit or in privity with those parties and bound by

the judgment for purposes of res judicata.

### 3.    The same claim or cause of action was involved in both lawsuits.

Texas follows a transactional approach to determining whether two actions

are sufficiently related for purposes of *res judicata. Ingersoll–Rand*, 997 S.W.2d

at 206–07; *Barr*, 837 S.W.2d at 630–31 (stating definition of "transaction" in

compulsory counterclaim and res judicata rules are "substantially similar").   This

Court recognizes that, "[u]nder the transactional test, a prior judgment's preclusive

effect extends to all rights of the plaintiff with respect to all or any part of the

transaction, or series of connected transactions, out of which the original action

arose."   *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir.

2005).

To decide whether the two lawsuits arise out of the same transaction or

occurrence, several factors are considered together, including "their relatedness in

time, space, origin, or motivation, and whether, taken together, they form a

convenient unit for trial purposes."   *Getty Oil Co. v. Ins. Co. of N.A.*, 845 S.W.2d

794, 799 (Tex. 1992). "Where there is a legal relationship, such as . . . a lease or

contract, all claims arising from that relationship will arise from the same subject

matter and be subject to res judicata." *Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382, 386 (Tex. App.—Beaumont 2004, pet. denied); *see also Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1342–43 (5th Cir. 1996) (finding previous defendant cannot assert new claims related to contract that was subject of previous suit).

Moreover, under Texas law, an employee cannot split claims for wages, such as commissions or salary, from claims for overtime. *D&L Prod. Co v. Cuniff D&L*, 180 S.W.2d 205, 206 (Tex. Civ. App.—Eastland 1944, writ dism'd). There, the court explained that federal statutes providing for overtime "became a part of plaintiff's contract of employment" and "he was required in a suit for his unpaid wages to include his overtime pay along with that due him under his express contract." The court added that "to permit one suit for his 'regular' time and another for overtime for the same work would be to permit plaintiff to split a single cause of action into two different suits." *Id.*; *see also Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 Fed. Appx. 359, 365 (5th Cir. 2011) (unpublished) ("Her compensation claims are clearly based on the same facts that gave rise to both Wang I and Wang II—*specifically, Prudential's failure to compensate her according to the law during her employment*; therefore, we hold that the fourth element of the test has been met as to Wang's compensation claims.").

Bodle and Meech's FLSA claims arise from the same transaction or occurrence as TXL's claims for breach of their employment contract, breach of fiduciary duty, conspiracy, unjust enrichment, Texas Theft Liability Act violations, conversion, misappropriation of trade secrets and tortious interference with contracts and prospective business relationships.  Doc. 21-1 Defs.' Mot. For Summ. J., Ex. A-1.  The record establishes that TXL's claims against Bodle and Meech all arose out of their breach of their obligations under their respective employment agreements.  *Id.*  As the settlement negotiations show, Bodle and Meech specifically asserted that they were owed wages and compensation from their employment with TXL and the parties discussed which party owed the other more money.  Doc. 21-1 Defs.' Mot. For Summ. J., Ex. 7.  Bodle and Meech now contend they are entitled to further additional wages allegedly withheld by TXL.  ROA. 8-16.  All of these claims, however, arose out of the same transaction or occurrence, *i.e.* the employment relationship, and were related in time, space, origin, or motivation, and taken together formed a convenient unit for trial purposes. *See Getty Oil Co.*, 845 S.W.2d at 799.  Accordingly, even if the Court were to somehow conclude that Bodle and Meech did not release their FLSA claims the FLSA claims are barred by the doctrine of res judicata, and the district court's summary judgment should be affirmed on this independent basis.

That conclusion is in accord with numerous cases to have considered the issue. *See, e.g., Olufemi v. Your Care Clinics, LLC*., 2006 WL 269982 at *3 (M.D. Fla. Feb. 3, 2006) (unpublished) (holding that plaintiff's' FLSA claim and defendants' counterclaim for breach of the covenant not to compete  arise "from a common nucleus of operative facts. At the center of both claims is the July 30, 2004, Physician Employment Agreement between the Plaintiff and Defendants. The Court finds that the basis of Defendants' counterclaim, the covenant not to compete, is an integral part of the employment contract and thus, bears a logical relationship with Plaintiff's FLSA claim."); *Barnes v. Royal Health Care LLC*, 357 Fed. Appx. 375, 377 (2nd Cir. 2009) (unpublished) ("Because those federal claims also arise from his employment and subsequent termination by Royal Health, he is therefore now precluded entirely from pursuing them in this action."); *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 989 (9th Cir. 2005) (holding former employee's claims against former employer under FLSA and FMLA arose out of same transaction or series of transactions as and could have been asserted in prior Title VII lawsuit against employer which alleged racial discrimination, and therefore were barred by res judicata); *Ovesen v. Scandinavian Boiler Serv., Inc.*, 2011 WL 3510586 at *4 n. 4 (S.D. Fla. 2011) (unpublished) ("Although Plaintiff may proceed on his FLSA claim in federal court and his breach of contract claim in state court, *by doing so he may create res judicata or claim preclusion problems*

for himself should one of the cases proceed more quickly to resolution than the other.") (emphasis added); *McConnell v. Applied Performance Techs., Inc*., 98 Fed. Appx. 397, 398–99 (6th Cir. 2004) (unpublished) (affirming grant of summary judgment on employee's FLSA claims based on res judicata because the employee's claims were compulsory counterclaims required to have been brought in earlier action based on overpayment of employee); *Stephens v. Assoc. Fin. Servs. Co., Inc*., 1993 WL 232055 at *2-3 (E.D. La. June 22, 1993) (unpublished) ("Both claims require the courts to construe the terms of the employment relationship between Stephens and Associates. The two claims rest on the same operative fact, the terms of Stephens's employment with Associates.").[8]

---

[8]     In the district court, Bodle and Meech contended that they were not barred from bringing the subsequent FLSA lawsuit because the claims were not compulsory in the Prior Action. While Bodle and Meech are correct that res judicata only applies only to compulsory counterclaims, they are incorrect that the FLSA claims do not qualify as compulsory counterclaims under Texas law. *See Ingersoll-Rand Co.*, 997 S.W.2d at 207. The Supreme Court of Texas instructs that "a counterclaim is compulsory only if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction." *Id.* "A claim having all of these elements must be asserted in the initial action and cannot be asserted in later actions."

Each element is met with regard to Bodle and Meech's FLSA claims. As noted above, the state court had jurisdiction to adjudicate the FLSA claims. *See* Section III.B.1. The FLSA claims were not the subject of any pending action at the time Bodle and Meech filed their answer in the Prior Action. *See* ROA. 8-16. Moreover, as any right to overtime had accrued at the time Bodle and Meech resigned from TXL, their wage claim under the FLSA was mature at the time they answered TXL's state court action. *See id.* The FLSA claims arose out of the same transaction or occurrence as TXL's claims and Bodle and Meech's counterclaim at issue in the Prior Action. *See* Section III.B.3. Finally, the FLSA claim is against TXL, a party in the Prior Action, and the FLSA claims do not require the presence of any third party over whom the state court lacked

## CONCLUSION

The evidence in the record establishes that the parties engaged in a bona fide dispute regarding Bodle and Meech's entitlement to additional wages and compensation from their employment with TXL and that they indisputably received substantial consideration in exchange for their release of those claims. The district court properly concluded that "because the parties disputed wages during the settlement negotiations, Bodle and Meech cannot now claim that their release of 'all claims and causes of action related to or in any way arising from [Bodle and Meech's] employment with TXL, whether based in . . . any federal state or local law, statute, or regulation' did not encompass a claim for unpaid wages, whatever its basis." ROA. 240-41. The district court's judgment should be affirmed.

In the alternative, in the event the Court somehow concludes that the release signed by Bodle and Meech does not effectively release their FLSA claims the evidence in the record establishes that the state court prior final judgment bars Bodle and Meech from bringing their FLSA claims pursuant to the doctrine of res judicata under Texas law. The district court's summary judgment should be affirmed for this independent reason.

---

jurisdiction. *See* ROA. 8-16. Accordingly, as Bodle and Meech's FLSA claim constituted a compulsory counterclaim under Texas law, the state court's judgment precludes them from bringing those claims in any subsequent action under the doctrine of res judicata. *See Ingersoll-Rand Co.*, 997 S.W.2d at 207.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.


By:*/s/ Levon G. Hovnatanian*
    Levon G. Hovnatanian
    State Bar No. 10059825
    *hovnatanian@mdjwlaw.com*
    Robert T. Owen
    State Bar No. 24060370
    *owen@mdjwlaw.com*
808 Travis, 20th Floor
Houston, Texas 77002
Telephone – (713) 632-1700
Facsimile – (713) 222-0101

**ATTORNEYS FOR APPELLEES
TXL MORTGAGE COMPANY AND
WILLIAM DALE COUCH**


## CERTIFICATE OF COMPLIANCE

This is to certify that this computer-generated brief of appellees TXL Mortgage Corporation and William Dale Couch contains 10,117 words.


    */s/ Robert T. Owen*
    Robert T. Owen
    Dated:  November 20, 2014

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Brief of Appellees was served upon the following counsel, via the method indicated, on this 20th day of November, 2014.

Charles A. Sturm
*csturm@sturmlegal.com*
STEELE STURM PLLC
Bank of America Center
700 Louisiana Street, Suite 4800
Houston, Texas 77002
Telephone – (713) 659-2600
Facsimile – (713) 659-2601
*(via e-filing & CM-RRR 7011 1150 0001 0054 8156)*

*/s/ Robert T. Owen*
Robert T. Owen
Dated:  November 20, 2014